Quoc T Pham
7950 Foothills Boulevard, #16
Roseville, CA 95747
Phone: 916-218-2872
Email: qtplaw@gmail.com
Attorney for Amanda Schindler

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA SCHINDLER, | Case No. <br> Judge: |
| Plaintiff, | **COMPLAINT** |
| v. | |
| ANN BUTLER, | 2 U.S.C. §1983 <br> - Judicial Deception <br> - Failure to Protect <br> - Judicial Deception and <br>   Concealment of Evidence |
| MILA VALLE, LISA TAYLOR, | |
| CHRISTINE BASS, SOPHIA WEBB, | |
| ANNA JAUREGUI, | Fraud <br> Banes Act |
| CONTRA COSTA COUNTY DCFS | **Jury Trial Demanded** |
| and Does I to X, | |
| Defendants | |

Plaintiff Amanda Schindler alleges causes of action against Defendant Salvatore Lombardo and Defendants Does I to X as follows:

## THE PARTIES

1. Plaintiff Amanda Schindler is an adult resident of Contra Costa County. Plaintiff Schindler brings this action against the Defendants for their violations of Plaintiff's civil rights involving failure to protect, judicial deception, threats, intimidation, and coercion under the California Bane Act, and for fraud in the juvenile dependency case commenced in April 2017 in the Contra Costa County Superior Court of California, in which Plaintiff was a minor dependent of the court.

2. Plaintiff was born on 12/06/2005. Plaintiff brings forth this suit within the statute of limitations tolled by minority.

3. The Northern District of California is the proper court and venue: the transactions and occurrences related to Plaintiff's claim occurred in California, mainly within the proper area under the jurisdiction of this district court.

4. Dr. Lisa Taylor, an endocrinologist with KP, saw Plaintiff once or twice in early 2017.

5. Mila Valle was a social worker with Kaiser Permanente during the relevant period.

6. Lisa Schinder is Plaintiff's mother. Plaintiff was covered under Lisa's KP health insurance plan.

7. Dr. Jon Boone was Plaintiff's psychiatrist at Kaiser Permanente (KP). Dr. Boone was Plaintiff's psychiatrist from February 2013 to May 2014.

8. Ann Butler was the investigative social worker for Contra Costa County DCFS. In April 2017, Butler petitioned the dependency court to start a proceeding to detain Plaintiff for hospitalization, group home, and foster care.

9. Christine Bass then took over as Plaintiff's case social worker until November 2017.

10. The DOES Defendants FM and FF were Plaintiff's foster parents until December 2017 in Escalon, CA. Plaintiff was placed in their home, following about a few weeks of hospitalization at KP and the Fremont Psychiatric Hospital, and a stay at a group home.

11. Sophia Webb was a social worker with Contra Costa DCFS. She took Plaintiff from the above foster home and placed Plaintiff with her maternal uncle Brad Schindler in Sacramento in December 2017.

12. Anna Jauregui then took over as the case social worker until the dependency case was dismissed in 2019.

13. Defendants Does I to X are other defendants whose true identities are not known to Plaintiff. The plaintiff plans to amend the complaint once their identities and roles are known.

## BACKGROUND FACTS

14. Plaintiff has suffered since early childhood from chronic mental health issues and other health issues, such as chronic constipation. In particular, Plaintiff had exhibited signs of fainting, long periods of sleep, and extreme sensitivities to overstimulation.

15. Plaintiff received psychiatric treatments with Kaiser Permanente, initially with Dr. Jon Boone, a psychiatrist.

16. Unfortunately, Dr. Boone overmedicated Plaintiff with numerous psychotropic medications, causing her conditions to worsen, resulting in several episodes of meltdowns, elopements, physical violence, suicidal ideations, sensitivities to environmental overstimulation, etc.

17. Plaintiff's mother, Lisa Schinder, attempted to wean Plaintiff off medications under the directions of Dr. Boone but failed because Plaintiff became suicidal and violent.

18. Plaintiff suffered PTSD from the trauma of a failed attempt at St. Helena Hospital to wean her off psychotropic medications prescribed to her by Dr. Boone.

19. Kaiser failed to treat Plaintiff and was unable to make referrals for Plaintiff to receive outside treatments.

20. Kaiser had a history of failures to provide its insured patients with timely access to mental health. In July 2017, KP had to sign a consent order with the California Department of Managed Health Care to address its access problems and to improve oversight of its behavioral health program.

21. Lisa had filed about 15 complaints against Kaiser for its failure to provide treatment for Plaintiff.

22. Plaintiff's mother then engaged Dr. Brian Goldman, a Stanford Hospital psychiatrist, to treat Plaintiff with carefully adjusted dosages of psychotropic medications to stabilize Plaintiff. The plan was to wean her off psychotropic medicines in the Summer to avoid interruption to her education. Under Dr. Goldman's care, Plaintiff became stable and did well at the Marchus Special Needs School.

23. In early 2017, Plaintiff's mother took Plaintiff to see Dr. Lisa Taylor, a Kaiser Permanente endocrinologist, to check on Plaintiff's slow growth and low weight.

24. Dr. Taylor and Kaiser Permanente social worker Milla Valle, having access to Plaintiff's medical records and with constructive knowledge of Plaintiff's psychiatric history and Kaiser Permanente's failure to provide mental health treatment, falsely reported to Contra Costa DCFS that Lisa overmedicated Plaintiff and caused her failure to thrive by deliberately restricting Plaintiff's caloric intake. They also falsely claimed that Lisa also missed a nutritionist appointment when, in fact, the appointment was rescheduled because Plaintiff had stomach flu.

25. Mila Valle was at Plaintiff's very first appointment with Dr. Taylor.

26. Upon information and belief, Dr. Taylor, Mila Valle, and other KP Does Defendants colluded with Contra Costa DCFS social worker Ann Butler to retaliate against Lisa for her numerous complaints against KP under the pretext that Plaintiff needed to be hospitalized to wean off her psychotropic medications for a baseline to see if any of the medications were the cause of failure to thrive.

27. On April 3, 2017, when Plaintiff was 11 years old, Contra Costa DCFS filed a dependency petition against Lisa Schindler, alleging that she suffered from Munchausen by Proxy syndrome, doctor shopping, failing to protect Plaintiff, overmedicated her, and caused her failure to thrive by restriction of caloric intakes, etc.

28. The dependency court later struck out the Munchausen by Proxy allegation but detained the Plaintiff on the false accusation by DCFS that her mother caused the failure to thrive and engaged in "polypharmacy".

29. At the time of detention, Plaintiff's height and weight were low for her age, but she did not meet the medical definition of failure to thrive. Plaintiff also has a family history of late puberty and growth. Her mother had the same delayed growth issue when she was about the same age as Plaintiff.

30. Plaintiff's mother is a pediatric nurse with an impeccable record at Contra Costa Medical Center maternity ward. She knows and has always followed instructions. She has never obtained or given Plaintiff any unauthorized medications.  All her medications were prescribed and administered under the direction of physicians.

31. After the detention hearing, DCFS immediately turned Plaintiff over to a team of Kaiser Permanente doctors, not supervised by a psychiatrist, for treatment in a pediatric ward instead of a psychiatric ward.

32. Ann Butler poisoned the minds of the treating physicians with false allegations that Plaintiff was medically abused and starved by Lisa, and that Lisa suffered from Munchausen by Proxy

33. The doctors took Plaintiff off all medications precipitously, causing severe withdrawal symptoms and triggering violent reactions and attempts to elope after a few days. Kaiser Permanente had to put Plaintiff under four-point restraint. They had to transfer Plaintiff to the Fremont Psychiatric Hospital, where another psychiatrist prescribed Wellbutrin.

34. Dr. Taylor, Mila Valle, and Ann Butler all knew and were warned of a previous disastrous attempt to wean Plaintiff off psychotropic medication.

35. Even though Dr. Taylor and Mila Valle initiated a child welfare action on behalf of the Plaintiff, they claimed ignorance of the disaster.

36. DCFS then put Plaintiff in a group home, then a foster home in Escalon, San Joaquin County, when they could have placed her with her grandparents or two uncles, one of whom was a probation officer.

37. In one of the visits with Plaintiff, Lisa observed that Plaintiff had bruises and looked like someone from a WW2 concentration camp.

38. Christine Bass ignored Lisa's complaint. Instead, Bass reported to the state court that Plaintiff was happy and ate well in foster care.

39. In the Escalon foster home, Plaintiff did not receive prescribed psychotropic medications consistently.

40. As of November 2017, Christine Bass had not secured psychiatric therapy and a nutritionist for Plaintiff as ordered by the state court.

41. During a contested hearing in November 2017, Lisa's attorney, through discovery, found out that Plaintiff had several episodes of meltdown, elopements, and violence

against teachers and kindergartners at her school. Plaintiff was stressed because of a 1.5-hour daily commute on a school bus.

42. Plaintiff attempted several times to run away from her school, stated that she wanted to die, and, for the first time, suffered actual malnutrition and the medical definition of failure to thrive.

43. Plaintiff's foster parents gave Plaintiff age-inappropriate, suggestive dresses and high heels so they could videotape her.

44. Even though DCFS alleged medical neglect and failure to thrive against Plaintiff's mother, while under the custody of DCFS, at least until the end of 2017, Plaintiff did not receive adequate and appropriate psychological, psychiatric, and medical treatment, and Plaintiff's conditions became much worse.

45. At the end of 2017, Plaintiff's conditions had deteriorated so severely that a DCFS social worker, Sophia Webb, had to remove her from the foster home and turn her over to Brad Schindler, an uncle and a probation officer who resided in Sacramento, without a court order.

46. Brad Schinder received Plaintiff in a scrawny and near catatonic condition. He reported that Plaintiff suffered from severe malnutrition, hunger, and fear of going back to foster and group homes.

47. Sophie Webb only represented to the state court that she had to take an emergency action to change placement without a court order because Webb did not want to put Plaintiff in a group home where there were boys. Sophie Webb did not inform the court of the abuse and neglect that Plaintiff suffered in the foster home, and that Webb had to turn her over to Uncle Brad because Plaintiff could have died in the foster home otherwise, causing great embarrassment and civil liabilities to Contra Costa County.

48. Under Uncle Brad's care, Plaintiff became stabilized again in a few months. Plaintiff's estranged father regained placement of Plaintiff in his home around the middle of 2018.

49. DCFS social worker Ana Jauregui was assigned to take over the case. Jauregui engaged in parental alienation, pitting Plaintiff against her mother at court hearings to suppress evidence that DCFS had caused Plaintiff severe trauma by the precipitous withdrawal of psychotropic medications, family separation, neglect, and abuse in foster care.

50. Jauregui told Plaintiff that her mother tried to kill her with medication and tried to starve her to death. Jauregui secured a letter from the Plaintiff stating that she did not want to live with her mother.

51. Jauregui also brought up the possibility of returning Plaintiff to a group home to terrify Plaintiff not to divulge the neglect and abuse in foster care and to speak against Lisa.

52. Jauregui even represented to the dependency court that the elderly and frail maternal grandparents, who were in their late 80s and 90s, drove from Concord to Folsom, where Plaintiff then lived with her father, to kidnap her.

53. In 2019, the dependency court closed the case, gave her father full custody, made a detrimental finding against Plaintiff's mother, and transferred the case to family court.

54. Around 2021, the father could not handle the Plaintiff's behavior and had to return Plaintiff to Lisa Schindler with full physical custody.

55. Under Lisa Schindler's care, Plaintiff gradually had fewer and fewer psychiatric issues and gained appropriate height and weight.

56. DCFS brainwashed Plaintiff into believing that she had no issues and that her mother had made them all up. For a long time, Plaintiff did not receive proper therapy and psychiatric treatment because DCFS brainwashed Plaintiff into believing that she had no issues and that her mother had made them all up.

57. Recently, Plaintiff received and accepted a diagnosis of ASD (Autistic Spectrum Disorder).

58. Plaintiff's education was severely interrupted. She missed classes after DCFS took her away from Lisa Schindler's custody. She has not been able to finish high school.

59. Plaintiff files this Complaint to preserve her rights to sue within the statute of limitations. Plaintiff plans to amend the complaint to include additional factual details and elements of her claims.

**FIRST CAUSE OF ACTION**

**42 U.S.C. §1983**

**JUDICIAL DECEPTION**

**AGAINST BUTLER,**

**TAYLOR (PRIVATE ACTION BECOMING PUBLIC ACTION),**

**VALLE (PRIVATE ACTION BECOMING PUBLIC ACTION),**

**AND DOES DEFENDANTS IN VIOLATION OF PLAINTIFF'S 14TH AMENDMENT**

**RIGHTS OF FAMILIAL ASSOCIATION THROUGH JUDICIAL DECEPTION AT THE**

**DETENTION PHASE**

**SECOND CAUSE OF ACTION**

**42 U.S.C. §1983**

**FAILURE TO PROTECT**

**AGAINST BUTLER, BASS, AND DOES DEFENDANTS**

**IN VIOLATION OF PLAINTIFF'S RIGHTS UNDER THE 14TH AMENDMENT**

**THIRD CAUSE OF ACTION**

**42 U.S.C. §1983**

**JUDICIAL DECEPTION AND CONCEALMENT OF EVIDENCE OF ABUSE AND NEGLECT**

**AGAINST BASS, WEBB, JAUREGUI**

**AND DOES DEFENDANTS**

**IN VIOLATION OF PLAINTIFF'S RIGHTS UNDER THE 14TH AMENDMENT**

**FOURTH CAUSE OF ACTION**

**42 U.S.C. §1983**

**JUDICIAL DECEPTION AND CONCEALMENT OF EVIDENCE OF ABUSE AND NEGLECT**

**AGAINST BASS, WEBB, JAUREGUI**

**AND DOES DEFENDANTS IN VIOLATION OF PLAINTIFF'S 14TH AMENDMENT RIGHTS**

**FIFTH CAUSE OF ACTION**

**42 U.S.C. §1983**

**MONELL CLAIMS AGAINST CONTRA COSTA COUNTY**

**FOR FAILURE TO TRAIN, FOR POLICY OF JUDICIAL DECEPTION AND COVERING UP**

**SIXTH CAUSE OF ACTION**

**BANE ACT AGAINST JAUREGUI**

**FOR COERCION AND THREAT AGAINST PLAINTIFF'S RIGHTS UNDER THE**

**FIRST AND FOURTEENTH AMENDMENTS**

**SEVENTH CAUSE OF ACTION**

**FRAUD AGAINST TAYLOR, VALLE**

**AND DOES DEFENDANTS**

**FOR FALSE REPORTING TO CPS IN BAD FAITH TO RETALIATE AGAINST**

**COMPLAINTS AND FOR RECKLESS DISREGARD OF TRUTH AND FALSITY**

**EIGHT CAUSE OF ACTION**

**AGAINST DOES FOSTER MOTHER (FM) AND FOSTER FATHER (FF)**

**FOR SEXUAL EXPLOITATION**

**WHEREFORE,** PLAINTIFF SCHINDLER PRAYS for a just and proper judgment and punitive damages against defendants and attorney fees.

Dated: December 8, 2025

QUOC PHAM,
Attorney for Plaintiff Amanda Schindler